UNITED STATES v. CLEIN.

(District Court, E. D. Washington, E. D. June 7, 1911.)

No. 1,458.

CRIMINAL LAW (§ 564*)—EVIDENCE—VENUE.

Evidence in a homicide case *held*, on a motion for a new trial, on the ground of the insufficiency of the evidence to prove that the crime was committed within the jurisdiction of the court, sufficient to sustain the conclusion of the jury.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 564.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Paul Clein was convicted of murder, and moves for a new trial. Motion denied.

Oscar Cain, U. S. Atty.

Alex M. Winston and E. V. Tustin, for defendant.

RUDKIN, District Judge. The prisoner, Clein, was convicted of the crime of murder, committed within the Ft. George Wright military reservation in the Eastern district of Washington, under section 5,339 of the Revised Statutes (U. S. Comp. St. 1901, p. 3627), and now interposes a motion for a new trial. The sole question presented by the motion is the sufficiency of the evidence to prove that the crime was committed within the jurisdiction of this court, and I will advert briefly to so much of the testimony as bears upon that issue.

The deceased was last seen alive in company with the prisoner in the city of Spokane, about 8 o'clock on the evening of March 1, 1909. About nine o'clock of that evening the prisoner hired a rig at one of the livery stables in the city, stating that he had lost his money at gambling, and was going to his home near the military reservation to procure funds. The rig was returned to the stable at about 2:30 o'clock on the following morning. About 6:30 o'clock on the same morning the prisoner hired a second rig at another stable, returning it to the stable about two hours later. A rig answering the description of that last mentioned was seen by one of the government witnesses between the hours of 7 and 8 o'clock on the morning of March 2d, standing at the western boundary line of the military reservation, a few hundred yards from the place where the body of the deceased was later found. Another witness for the government, a Mrs. Newkirk, saw the same rig passing her home between the city of Spokane and the military reservation, at about the same hour, and identified the prisoner as the occupant of the rig. The last-named witness further testified that she was aroused from her sleep some time during the night of March 1st and heard screams and the report of two gun shots, after which all was silent. The witness was in bed at the time, in her home, with the windows closed down. She did not know who uttered the screams, or who fired the shots, or even the direction from which the sounds came. She only knew that she heard the screams and the shots, and that they seemed near by, or at least not very far distant from her house. On the afternoon of March 21, 1909, the body of the deceased was found on the Ft. George Wright military reservation, four miles northwesterly from the city of Spokane, at a point about 150 yards from its southern boundary, and perhaps double that distance from its western boundary, where the rig was seen standing some three weeks before. The overcoat of the deceased, stained with blood, was found about 50 yards in a westerly direction from the body. His hat was found about 50 yards from the overcoat, likewise in a westerly direction. When found, the body was lying face downward on a small knoll in an open space in the timber with the legs crossed, and the hands or arms folded underneath the body. The autopsy disclosed a gunshot wound in the mouth through the upper lip, a second gunshot wound in the mouth through the lower

lip, a third gunshot wound in the neck, a wound inflicted by some blunt instrument on the cheek, and an abrasion about one inch in diameter on the back of one of the hands. But while the surgeons found only three bullets in the body, the undertaker found a fourth, which would seem to indicate that the wound in the cheek was probably inflicted by a gunshot. That fact, however, has no bearing upon the question now under consideration, and is immaterial.

The foregoing are all the facts bearing directly, or even remotely, on the questions presented by the motion, namely, where did the deceased meet his death?

"The venue need not be proved by direct and positive evidence. It is sufficient if it may be reasonably inferred from the facts and circumstances which are proven and are involved in the criminal transaction. It is enough if it may be inferred from the circumstances by the jury that the crime was committed in the county alleged in the indictment.

"The venue need not be proved beyond a reasonable doubt. If the only rational conclusion from the facts and evidence is that the crime was committed in the county alleged, the proof is sufficient." Underhill, Crim. Evidence (2d Ed.) § 36.

In Commonwealth v. Costley, 118 Mass. 2, 26, the court, speaking through Gray, C. J., said:

"The finding of the body, with the marks upon it of injuries sufficient to cause death, in a river in the heart of the county of Norfolk, in such a situation and condition as to show that it must have been thrown there by the hand of man, and not drifted there by the force of the tide or current, was sufficient to warrant the jury in concluding that the homicide was committed in that county."

In that case the body was found from 2½ to 3 miles from the county line. See, also, Carter v. Ross, 40 Tex. Cr. R. 225, 47 S. W. 979, 49 S. W. 74, 619; Wharton's Crim. Evidence (9th Ed.) § 108.

So, in this case, the finding of the body on the military reservation, with the marks upon it of injuries sufficient to cause death, showing that it must have been placed there by the hand of man, was sufficient to warrant the jury in concluding that the homicide was committed on the military reservation, and therefore within the jurisdiction of this court. I do not understand that counsel for the prisoner deny the correctness of this proposition, but they do contend that any inference or presumption that might arise from the finding of the dead body and wearing apparel of the deceased on the reservation is overcome and explained away, first, by testimony tending to show that the body was moved after death, and second, by the testimony of the witness Mrs. Newkirk. Physicians expressed the opinion that the deceased did not fall or die in the position in which his body was found, and that the body was placed in that position after death; but conceding such to be the case, the testimony proved nothing beyond the fact that the body was moved after death. How far it was moved, or from what direction does not appear, and the fact of removal, if conceded, carries with it no presumption that it was removed from some point beyond the reservation boundaries.

Before the testimony of Mrs. Newkirk can have any bearing upon the question of venue, the court must be satisfied, first, that her tes-

timony was true; second, that the shots heard by her were the shots that caused the death of the deceased; and, third, that the shots were not fired on the military reservation, at or near the place where the body was found. The testimony of this witness was not indispensable to the government's case, and her credibility, as well as the inferences to be drawn from her testimony, were exclusively for the jury. It does not appear that the witness related the somewhat extraordinary circumstances to any person until near the close of a long trial of the prisoner for this same homicide in the superior court of Spokane county, during the month of May following, although she attended that trial as an interested spectator almost daily. The jury may have concluded that her testimony was the product of an overwrought imagination, and discredited it entirely, and in my opinion they would have been warranted in so doing. But if her statement is true, there is nothing to connect her testimony with the homicide, except the mere coincidence of time and place. The deceased was undoubtedly shot and killed some time during the night of March 1st, and his dead body was found on the military reservation about three weeks later. The witness heard two gunshots and a scream some time during the night of March 1st, about three-quarters of a mile from the place where the dead body was found. These facts alone would seem to furnish very inconclusive evidence that the shots heard by Mrs. Newkirk were the shots that killed the deceased. But conceding that the shots heard by her were the shots that caused the death of the deceased, it does not follow that they could not have been heard from the point on the military reservation where the body was found. The distance is only 1,600 or 1,700 yards, and shots and screams might well be heard at that distance. Three witnesses for the prisoner made an experiment, and one of them stationed in the room occupied by Mrs. Newkirk on the night in question was unable to hear either shots or screams from the point where the body was found. Witnesses for the government made another experiment; and the shots could be heard quite distinctly outside the Newkirk residence, but no screams were uttered and no experiment was made from within the building. Some voices are more penetrating than others; some shots are louder than others, and you can hear much more distinctly and much farther in the stillness of the night than at other times. We have all heard similar sounds at fully as great a distance, under circumstances fully as adverse, and for these reasons the verdict of the jury should stand. The dead body with the discarded wearing apparel was found on the military reservation, without any apparent attempt at concealment; no reason is offered or suggested why the body should be carried to that place after death from off the reservation; the jury heard the testimony and viewed the premises, and I must accept their verdict as a finality.

It was admitted in argument that a verdict of guilty of murder in the first degree, returned in the superior court of Spokane county, where the prisoner was tried for the same homicide, was set aside by the court, for the reason that the proof showed that the crime was committed on the military reservation and without the jurisdiction of the

state court, and I am now asked to determine the question the other way as a matter of law. If I were convinced that such were the fact I would not hesitate to so rule, but the testimony makes no such impression upon me. I cannot agree with the judge of the state court that the testimony is so conclusive either way as to render the question of venue or jurisdiction one of law for the court, but that question is immaterial here.

The motion for new trial is denied.