## UNITED STATES

### v.

**Captain Richard S. MITCHELL, 267–58–4544, U. S. Army, Company B, 2d Battalion, 7th Special Forces Group (Airborne), Fort Bragg, North Carolina.**

### CM 433434.

U. S. Army Court of Military Review.

Sentence Adjudged 13 March 1975.

Decided 29 Oct. 1976.

14. *United States v. McCarthy, supra*, 2 M.J. page 28.

Appellate Counsel for the Accused: Jack E. Carter, Esquire; Carl A. Barrington, Jr., Esquire; Henry W. Witcover, Esquire; CPT Ralph E. Sharp, JAGC: CPT David J. Livingston, JAGC: MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Larry R. McDowell, JAGC: CPT Richard S. Kleager, JAGC; MAJ John T. Sherwood, JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

JONES, Senior Judge:

Appellant stands convicted of the premeditated murder of his wife in violation of Article 118(1), Uniform Code of Military Justice, 10 U.S.C. § 918(1). He was sentenced to dismissal and life imprisonment. We are reviewing the case pursuant to Article 66, UCMJ.

On the evening of 30 November 1974 the appellant and his wife attended a promotion party at the Fort Bragg officers' club. After the party they went with friends to the home of a neighbor in their off-post residential area. They remained at the neighbor's until 12:30 a. m., 1 December 1974, when they departed, the appellant stating he was to be Officer of the Day the next day and his wife stating she had to get *up* early with the baby.

At about 2:30 a. m. the Charge of Quarters of a Fort Bragg unit noticed a Mercedes automobile with the right rear tail light on in the parking lot across from his building. Subsequently, at about 4:30 a. m. a military police patrol saw the car and investigated. The passenger side door was ajar, the key was in the ignition, sand was on the floor and the interior was covered with blood. A check of post vehicle registrations disclosed the car belonged to appellant.

In a search of the Fort Bragg reservation on the morning of December 1st, an agent of the CID discovered the nude body of the victim a few yards off a tank trail in a wooded area near the nuclear weapons storage facility. Her clothes, the murder weapon a stiletto type knife, and kleenex tissues used to clean up, were found under a bush along a paved road about a quarter of a mile away.

An autopsy established that Mrs. Mitchell died of multiple stab wounds of the chest and neck. She also had a broken nose, bruises and abrasions on her face, and bruises on her neck. She was not sexually assaulted. From the nature of the wounds, the amount of blood in the car, the absence of a significant amount of blood on her clothes, and the absence of any holes in her blouse, it was concluded that the stabbing occurred in the Mercedes and that Mrs. Mitchell was nude and probably unconscious at the time.

### I

The appellant was charged with committing the offense at Fort Bragg, North Carolina. The military judge instructed the court that if they had "a reasonable doubt concerning the place in which the alleged offense occurred, but [were] satisfied beyond reasonable doubt that the offense . . . was committed at a place which [differed] in minor respects from the precise place alleged in the specification, [they could] make minor modifications by exceptions and substitutions in reaching [their] findings. . . ." The court thereupon returned a finding of guilty of premeditated murder "at *or near* Fort Bragg, North Carolina." (emphasis added).

Trial defense counsel argued that the court's change in the place of the offense reflected a failure of the evidence to establish a fact necessary for jurisdiction over the subject matter, based upon *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The military judge agreed that the evidence did not establish precisely whether the offense occurred on or off post but, treating counsel's motion as one of lack of jurisdiction, he found "sufficient incidents of service connection and military significance" upon which to base the jurisdiction of the court-martial. The military judge denied the motion.

■ The appellant renews his argument before this Court that the Government failed to establish jurisdiction and that the charge should therefore be dismissed. We disagree. First, notwithstanding the trial court's uncertainty, we think the evidence points unerringly to the conclusion that the offense occurred on post. Several factors support this determination, *viz.,* the discovery on post of the body of the victim, the clothing of the victim, the murder weapon, and the vehicle in which the offense occurred; the need for an isolated area to carry out the disrobing, the stabbing, the cleanup, and the disposal of the body, clothing, and weapon; the heavily wooded portion of the reservation, honeycombed with tank trails provided the ideal location; the unlikelihood that the acts involved would have been performed in the built-up, lighted, residential area adjacent to the reservation; and the inference from finding the body, clothing, and weapon on the reservation that the death occurred there, together with the lack of any presumption from the fact that the body was moved, that it was moved on post from some point off the reservation after the murder occurred. *See United States v. Clein,* 189 F. 201 (E.D.Wash.1911).[1]

■ This Court has independent fact-finding power and in the exercise of that power we "may weigh the evidence and determine controverted questions of fact differently from the court-martial." *United States v. Sikorski,* 21 U.S.C.M.A. 345, 45 C.M.R. 119 (1972). There are certain instances, of course, when we could not make a contrary finding (e. g., when the factual determination went to the question of guilt or innocence), but that is not the case here. *See United States v. Johnson,* 6 U.S.C.M.A. 320, 20 C.M.R. 36 (1955). We therefore find based on the factors outlined above, that the offense occurred on the military reservation "at Fort Bragg, North Carolina." Under the decisions of *O'Callahan* and *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), "a serviceman's crime against the person of an individual upon the base . . . is 'service connected . . .'" and thus triable by court-martial. The United States Court of Military Appeals in its recent cases of *United States v. McCarthy,* 2 M.J. 26 (Sept. 24, 1976), and *United States v. Hedlund,* 2 M.J. 11 (Sept. 17, 1976), pointed to those Supreme Court decisions as holding that on-post offenses against a person are always service connected. Therefore the first basis for jurisdiction is that the crime occurred on the military reservation.

■ A second basis for jurisdiction is in the finding of the court-martial as to the place of the offense—"at or near Fort Bragg. . . ." The Supreme Court of the United States recognized in *O'Callahan* and *Relford* that jurisdiction is not automatically lost once a fixed boundary is crossed; that some offenses from the very location of their occurrence just outside the reservation can be as service-connected as those occurring inside the boundary. The Court quoted with approval in both of those cases the language of Colonel Winthrop's treatise on military law that crimes against civilians "at or near a military camp or post . . . ." are subject to court-martial jurisdiction.[2] The court-martial in the instant case specifically found the offense to have

---

1. The parallel between *Clein* and the instant case on the factual issue of whether the offense occurred on or off the military reservation is striking.

2. W. Winthrop, Military Law and Precedents, 725 (2d ed. 1896, 1920 Reprint.)

occurred "at or near" Fort Bragg, a location differing only in a minor respect from that charged. The second basis is, therefore, that this occurrence at or near Fort Bragg is also sufficient for jurisdiction.[3]

■ For the third and final basis for jurisdiction we will evaluate the 12 factors outlined in O'Callahan and Relford even though commission of this offense against the person on-post or off-post but near the geographic boundary of the reservation would be sufficient in and of itself to support jurisdiction. However, because we believe those factors weigh heavily for court-martial jurisdiction even if we assume the offense occurred off-post and away from the boundary, we will record our conclusions. We will follow somewhat the same format as Relford and Hedlund and use the same numbering system for the 12 factors.[4]

Elements 1, 2 and 3 would favor no jurisdiction, once the crime is assumed to have occurred off-post, for the appellant's absence was unquestionably proper and the military was not in control of a place beyond the reservation boundary. Additionally, elements 4, 5, 9, 12 and probably 6 and 7 favor non-service connection: (4) the crime did not occur in an occupied zone or foreign country but within the United States; (5) the crime occurred in peacetime and had no relation to the war power; (6 and 7) there was no apparent connection between the crime and the appellant's military duties, or between the crime and any military related duty of the victim even though both had attended a social function of the type often considered mandatory at many military installations; (9) there was no flouting of military authority; and (12) murder is an offense traditionally prosecuted in civilian courts as well as courts-martial.

The jurisdictional criteria favoring trial by court-martial are: (8) the civilian courts were open and operating but the local prosecutor had declined to handle the case for lack of jurisdiction.[5] He would have faced an insurmountable evidentiary problem as the only facts indicating the offense occurred away from the post were that the victim was last seen alive in the civilian residential community and two screams were heard in that same area at about the time she and the appellant would have arrived home after the party. Obviously the prosecutor deemed this insufficient for him to establish jurisdiction; (10) the security of the post was violated by the disposal of the body, clothing, and weapon and the abandonment of the vehicle in such a manner as to make it appear that the crime occurred on post (for the evaluation of these criteria we are assuming the crime occurred off-post). Such an attempt to make it appear the crime occurred on post was as violative of security as would be the actual commission on post. Large expanses of wooded, undeveloped land are needed for training purposes and they cannot be allowed to become crime areas. Also of importance to security of the post was the proximity of the place where the body was found to the nuclear weapons storage area, probably the most sensitive facility on the reservation; and (11) although no personal property was stolen or damaged, the integrity of the real property was violated by the disposal of the body, clothing, weapon, and clean-up materials.

---

3. It was actually unnecessary for the military judge to have reached the question of military significance or service connection.

4. (1) The serviceman's proper absence from the base; (2) the crime's commission away from the base; (3) its commission at a place not under military control; (4) its commission within our territorial limits and not in an occupied zone of a foreign country; (5) its commission in peacetime and its being unrelated to authority stemming from the war power; (6) the absence of any connection between the defendant's military duties and the crime; (7) the victim's not being engaged in the performance of any duty relating to the military; (8) the presence and availability of a civilian court in which the case can be prosecuted; (9) the absence of any flouting of military authority; (10) the absence of any threat to a military post; (11) the absence of any violation of military property; (12) the offense's being among those traditionally prosecuted in civilian courts.

5. The appellant in arguing that the local magistrate had no authority to issue a warrant to search appellant's home (see section II, infra) maintains that the offense occurred on post and the state courts had no jurisdiction.

The Supreme Court in *Relford* indicated that "significant aspects of the . . . offenses" other than the 12 factors listed may be considered on the question of jurisdiction. One of these, the status of the victim as a military dependent was present in *Relford* and is also present here. Another, but of lesser significance, was the fact that appellant's car bore a Fort Bragg registration decal, thus permitting it to move freely on post at that early hour of the morning without arousing interest from a military police patrol.

The military can claim no more interest in deterring husbands from killing their wives than the similar interest that exists in civilian society but the military does have a distinct interest in the effect this offense by an officer and troop leader has on the discipline within his highly specialized Special Forces unit. That interest is distinct from and greater than that of civilian society. In fact the disciplinary aspect is nonexistent in civilian society. We do not believe it can be vindicated adequately in a civilian court, and particularly one which disclaims any jurisdiction over the offense. *Cf. Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. McCarthy, supra.*

In balancing all of the considerations, we believe the factors favoring court-martial jurisdiction, although lesser in numbers than those favoring no jurisdiction, are of greater importance. Therefore, we find the court-martial had jurisdiction to try appellant for the offense on this third basis as well.

**6.** The appellant also contended at trial that he was not given the proper warning of his rights under the constitution and under Article 31, UCMJ. The appellant has not reasserted that ground as error before us and properly so as the warning given by Detective Conerly met the requirements of *Miranda* and Article 31, UCMJ.

**7.** § 15.25 Search warrants for contraband, evidence, and instrumentalities of crime.—(a) Any justice, judge, clerk, or assistant or deputy clerk of any court of record, any justice of the peace, or any magistrate of the General Court of Justice may issue a warrant to search for any contraband, evidence, or instrumentality of

## II

After a discussion with agents of the Fort Bragg CID on the day after the crime, Detective Conerly of the local sheriff's office obtained a warrant to search appellant's home for "bloody clothes, shoes, evidence of cleaning of bloody items. . . ." When he found none of these items, Detective Conerly advised appellant of his rights and questioned him about what he was wearing on the night of the offense. The appellant described his clothing and then produced it.

At trial the appellant moved to suppress the introduction of his statement describing the clothing and the clothing itself on the grounds that:

a. The magistrate who issued the search warrant had no authority to do so because the crime occurred on the military reservation, a place outside his jurisdiction; and

b. Probable cause for issuance of the warrant was not established.

The military judge denied the motion and the appellant maintains before us that that ruling was error.[6] We disagree.

The appellant has changed the nature of the first ground for error somewhat before us but the thrust of it remains the same, *viz.*, a magistrate may not issue and a law enforcement officer may not execute a warrant for an offense occurring outside his territorial jurisdiction even though the place to be searched is within his jurisdiction. This interpretation of the North Carolina statute[7] by appellant is contrary to its

crime upon finding probable cause for the search.

(b) Any search warrant issued by any Justice of the Supreme Court, judge of the Court of Appeals, or judge of the superior court may be executed anywhere within the State. Any search warrant issued by any other official of the General Court of Justice may be executed as provided in chapter 7A of the General Statutes. Any search warrant issued by any other judicial official or officer of any other court may be executed only within the territorial jurisdiction of such official or court.

(c) The warrant may be executed by any law-enforcement officer acting within his terri-

plain meaning and would effectively reduce the basis for issuance and execution of a warrant to one of geography. Our reading of the statute is that a search warrant may be executed by any law enforcement officer provided the place to be searched is within his geographic area and provided the offense involved is one of the type over which he has authority. The latter proviso, subject-matter jurisdiction, means jurisdiction over the general class of crime [8] and not, as appellant contends, jurisdiction over the place where the crime occurred. There is no limitation in the statute related to where the offense occurred. Appellant was unable to offer any authority to support his interpretation and our research has disclosed none. We find the magistrate had authority to issue the warrant and the detective had authority to execute it.

■ The gist of appellant's argument on the probable cause issue is that there were insufficient facts to show that the items sought would probably be found at appellant's residence. In our opinion the inferences to be drawn from the facts related point overwhelmingly to the conclusion that the objects of the search would be found there. That his blood-soaked trousers, shoes and belt were found a couple of blocks away from the house in no way diminishes the validity of the conclusion that items of that nature would probably be at the house. The victim was last seen alive at about 12:30 a. m. with the appellant in their car; the murder occurred in the car; the car was seen in the parking lot at about 2:30 a. m.; and the car was so blood-splattered that the assailant's clothes were undoubtedly covered with blood. From these facts the magistrate had probable cause to believe that bloody clothing or evidence of a clean-up would be found at appellant's residence.

### III

■ We find the evidence of guilt sufficient beyond a reasonable doubt. As related previously, the victim was last seen alive with the appellant in their car; the murder occurred in the car; and the car was abandoned a short time later. Additionally, the murder weapon was identified as a type seen among a collection of knives in appellant's garage. Appellant's identification and production of the clothing he wore on the night in question was most damaging. Witnesses testified that the light blue trousers, brown tie and brown shoes he had identified were not what he was wearing. They stated he was wearing a dark suit. The dark trousers matching the suit coat he produced were found ripped apart and deposited in two storm sewers about a block from his house. A pair of black shoes and a belt, both in his sizes were also found a short distance from the sewers. The trousers were covered with blood which was identified by a chemist from the Army crime laboratory as the same type as the victim's. Finally, appellant had scratches on his hands and legs which could have come from walking through underbrush at the scene of the crime or in returning home from the parking lot.

■ The element of premeditation may be inferred from the circumstances. After striking and choking the victim, rendering her unconscious, the appellant had to obtain the murder weapon (such a knife would hardly be carried on his person) and undress the victim before stabbing her. The latter action, when coupled with the manner in which the body and the clothes were disposed of and the Mercedes abandoned in a parking lot across from troop barracks, shows a course of conduct conceived prior to the actual stabbing to make it look like a sex crime by a soldier.

The facts that a drunken, barefooted, shirtless soldier was picked up at about 5:30 a. m. in the same parking lot as the car and

---

torial jurisdiction whose subject matter jurisdiction encompasses the crime with which the object of the search is involved.

8. As an example, a metermaid whose law enforcement authority was limited to parking violations could not execute a search warrant in a murder case.

that the body of another nude female, stabbed numerous times was discovered in an isolated area of the reservation a few days before appellant's trial at a time when appellant was in the stockade are not sufficient to raise a reasonable doubt as to appellant's guilt.

## IV

■ We have considered the remaining error assigned by appellant but we do not believe it warrants discussion or corrective action.

The court-martial sentenced appellant to a dismissal and the mandatory life sentence but recommended that the convening authority reduce the confinement to twenty-five years. The convening authority declined to do so.

The appellant is 36 years of age. He has two children who are being cared for by his elderly widowed mother.

The appellant entered the Army in 1958 after graduating from high school. He received his commission in 1966 from Field Artillery OCS. He transferred to the Infantry in 1969. His military education includes the Language School (Spanish and Vietnamese), Counter-Insurgency School, Institute of Military Assistance, Jump Master School and Jungle Operations School. He received his Bachelor of Arts degree while in the service in 1971 from Oklahoma College.

The appellant has served overseas in Korea, Vietnam (2 tours), Panama and Germany. His awards are the Good Conduct Medal, National Defense Service Medal, Vietnam Service Medal, Air Medal, Bronze Star with 3 Oak Leaf Clusters, Combat Infantry Badge, and the Vietnamese Cross of Gallantry.

We have considered the nature of this offense, the appellant's excellent military record, and the recommendation for clemency by the court. We find the dismissal and life sentence to be appropriate for the offense.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge FELDER concurs.

Judge O'DONNELL concurring:

I concur with the majority opinion with respect to the issues concerning search and seizure and sufficiency of the evidence. However, I concur only in the result as to the jurisdictional issue.

Senior Judge Jones concludes that we may properly find that the murder was perpetrated on the Fort Bragg military reservation and that we may sustain jurisdiction on that basis. I agree. However, I believe it is appropriate to develop the rationale for that conclusion in more detail.

This Court has independent fact-finding power, but the power is not unbridled. For example, we may not, by virtue of this power, sustain a conviction in the face of findings by the court members which in effect amount to an acquittal. Thus, if the findings of the court-martial in this case with respect to situs amounted to a finding of not guilty, we may not go behind those findings. Accordingly, before we may properly find that the instant offense was committed on post, in the face of the ambiguous findings of the jury below, we must first examine the role played by judge and jury in the area of jurisdiction.

Once an issue is raised as to jurisdiction, the Government has the burden of showing that jurisdiction exists. *United States v. McCarthy*, 2 M.J. 26 (24 Sept. 1976); *United States v. Barrett*, 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975). The question of jurisdiction is generally an interlocutory one to be decided by the military judge, even when the facts are in dispute. *See* Article 51(b), Uniform Code of Military Justice. However, as the Court of Military Appeals noted in *United States v. Ornelas*, 2 U.S.C.M.A. 96, 101, 6 C.M.R. 96, 101 (1952):

"[W]here an accused raises a defense or objection which should properly be considered by the court in its determination of guilt or innocence, and which resolves itself into a question of fact, that issue must be presented to and decided by the court pursuant to appropriate instruction.

**1028**

But where the issue is purely interlocutory or raises solely a question of law, it is within the sole cognizance of the law officer."

In *Ornelas*, the Court held that the law officer erred in not submitting the factual issue of the accused's induction to the members since the accused was charged with desertion, a purely military offense. In other words, as only a member of the armed forces may commit desertion, the factual issue of the accused's military status reached the issue of guilt or innocence and should have been decided by the court members as part of their findings. *Ornelas*, however, must be limited to its facts. If the offense in question is not purely military in nature, the factual issue of the accused's status goes only to his amenability to stand trial and is decided by the judge as a purely interlocutory matter. Paragraph 57*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). *See United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973); *United States v. H. E. Koontz Creamery, Inc.*, 232 F.Supp. 312 (D.Md. 1964). In deciding these issues the military judge applies a preponderance of the evidence standard, while the court members use the normal reasonable doubt standard.

As the offense in the case *sub judice* is not purely military, the jurisdictional issue was not required to go to the court members and in fact was not submitted to them. All that the members were required to do was decide whether an offense had been committed by the appellant, to include the place where it occurred. We are not reviewing that determination, as far as the jurisdictional issue is concerned, but rather the validity of the judge's ruling on the post-findings motion to dismiss. In so doing, we are not bound by his factual determination.* I am satisfied in reviewing the evidence of record that the murder was committed on the Fort Bragg military reservation. That determination is sufficient to sustain jurisdiction. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

However, I am unable to agree that jurisdiction may be sustained on the other two bases set forth in the majority opinion. A finding that the offense was committed "at or near" Fort Bragg is not a finding that it occurred "at" Fort Bragg and is not sufficient to sustain jurisdiction in the absence of other factors showing a service connection. *See United States v. McCarthy, supra. See also United States v. Williams*, 41 C.M.R. 640 (A.C.M.R.1969).

The third basis for jurisdiction relied on by the majority is that assuming the offense was committed off post, a sufficient service connection is established by three of the *Relford* factors, *viz*: the unavailability of the civilian courts, a violation of the security of the post by disposal of the body and other evidence of the crime on post, and a violation of the integrity of the post for the same reason. Under the facts, I am unable to discern any threat to the military post or a violation of military property, at least of sufficient magnitude to constitute a service connection within the meaning of *O'Callahan* and *Relford*.

I am therefore left with the unavailability of the civilian courts as a possible factor. This argument, while superficially attractive, does not bear up under scrutiny. (It must be remembered that this factor is significant only if it is assumed that the offense was committed off post. If it were committed on post, jurisdiction is present and there is no need to consider other factors.) The North Carolina courts were unavailable because the state authorities concluded that the offense was committed on the military reservation, a place over which they had no jurisdiction. The military authorities also accepted that proposition and prosecuted on that theory. The Government cannot now say that the unavailability of the civilian courts, based on a belief that the crime was committed on post, supplies the jurisdictional predicate for trying the appellant on the after-acquired theory that the offense was actually committed

* The judge apparently accepted the ambiguous findings of the court members as to the situs of

the offense but found a service connection on the basis of other factors.

off-post, in which case the civilian courts would presumably have been available. The only other possible service connection was the relationship between the appellant and the victim. That, of course, must be considered, but I do not find it decisive.