**UNITED STATES**

**v.**

**Specialist Four Jose L. ORTIZ–NEGRON, 584–50–6505, US Army, Headquarters and Headquarters Company, 1st Battalion (Mechanized), 10th Infantry, 4th Infantry Division (Mechanized), Fort Carson, Colorado.**

**CM 433140.**

U. S. Army Court of Military Review.

Sentence Adjudged 29 Jan. 1975.

Decided 12 Nov. 1976.

Appellate Counsel for the Accused: CPT Michael P. La Haye, JAGC; CPT Lawrence E. Wzorek, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Regis J. McCoy, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC.

DECISION ON FURTHER REVIEW

COOK, Senior Judge:

This Court's earlier decision in this case was vacated by the United States Court of Military Appeals on 10 February 1976 and the case was remanded to us to await the

United States Court of Military Appeals disposition of *United States v. McCarthy.*[1]

On 29 January 1975, appellant was convicted, contrary to his pleas, at a bench trial general court-martial, of the possession and sale of heroin on 9 July 1974 and for like offenses on 20 August 1974. These crimes were alleged as violations of Article 92, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 892) (which relieves us of the necessity of considering the impact of *United States v. Courtney,* 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976)). Also, the astute trial judge treated each sale and possession as multiplicious for sentencing purposes which resulted in a maximum permissible sentence, for confinement purposes, of four years. This ameliorates the problem presented by *United States v. Axley,* 24 U.S.C.M.A. 84, 51 C.M.R. 257, 1 M.J. 265 (1976).

The remaining issue which demands our views concerns an *O'Callahan*[2] jurisdictional question. Appellant asserts that the sale and possession offenses which were allegedly committed on 20 August 1974 were not "service connected" as they occurred off-post, in Colorado Springs, Colorado.

At the outset we note, that the specification alleging the 20 August 1974 sale charges that it occurred "at Fort Carson, Colorado and Colorado Springs, Colorado" and the court's findings accorded with that allegation. Additionally, it is noted, that the trial court specifically found that the possession offense of that same date occurred only in Colorado Springs, Colorado.[3]

The principal prosecution witness in this case was a man named Velasco. This individual had been in the service but was discharged prior to the offenses in question, on 26 June 1974. While on active duty, he had worked as an informant for the CID and continued in this role after his discharge. Apparently, he was motivated by his abhorrence of drugs caused by the death of several of his childhood friends.

In his capacity as a civilian undercover operative, Velasco contacted appellant on 9 July 1974 in order to arrange for a purchase of heroin. He singled out appellant to approach because he had seen him sell heroin to other soldiers on four to six earlier occasions. At the outset of the conversation with Velasco on 9 July, appellant asserted that he wasn't a dealer. After Velasco repeated his requests, however, appellant agreed to get some heroin for Velasco. Later that same day, in appellant's barracks room, appellant sold Velasco four packets of heroin for $100.00. Velasco turned this cache over to the CID. It was decided that another approach should be made to the appellant in the hope that the authorities might be able to identify his supplier. Consequently, on 20 August 1974, after appellant returned from leave, Velasco again approached him with an offer to buy heroin. As before, appellant professed not to be a dealer and initially declined to sell to Velasco. Their conversation was ultimately terminated when appellant told Velasco that he would see what he could do for him. Further, he gave Velasco an off-post phone number where he instructed Velasco to contact him that evening "and confirm whether or not he'd be able to get . . . some". Velasco called as instructed and appellant told him he had the heroin and for Velasco to come by his apartment in Colorado Springs and pick it up. The sale was consummated at the apartment later that same evening.

As we related earlier, it is this second transaction that appellant alleges falls without the jurisdiction of the military because it is not "service connected."

■ At the urging of the United States Court of Military Appeals,[4] this Court is in the process of re-examining the matter of drug offenses as they are affected by the

---

1. This was accomplished in 2 M.J. 26 (24 September 1976).

2. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

3. That this Court is not bound by such findings of fact, *see United States v. Mitchell,* 2 M.J. 1020 (A.C.M.R. 29 October 1976).

4. *See United States v. McCarthy, supra.*

*O'Callahan* doctrine.[5] The guiding light provided by *United States v. Beeker,* 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969) has been dimmed, if not snuffed, by the United States Court of Military Appeals in its *McCarthy* opinion [6] and this Court must now approach each case on an *ad hoc* basis using as a beacon the *Relford* [7] duodenary rules. These 12 canons have been so oft repeated of late as to be all but a litany,[8] therefore, we won't duplicate them here.

 Suffice to say the *Relford* decision clearly recognized the paramount interest of the military in maintaining the sanctity of its camps, posts and stations against the presence of criminal activities.[9] While it is true beyond cavil that the sale for which appellant was tried was ultimately consummated in Colorado Springs, a place not under military control, it cannot be said with equal certainty that that location is where the crime was committed. Appellant, clearly evidenced during the on-post negotiations his assention to Velasco's request to buy some heroin. His only reservation concerned his ability to find some of the drug. We find, therefore, that a sufficient portion of the transaction occurred on post to justify a conclusion that the sale was "committed" on post.

Furthermore, the fact that the purchaser was a civilian undercover agent does not, in our view, diminish one iota the criminal nature of the act nor does it, under these facts, affect the question of jurisdiction.[10]

In summary, we hold that the agreement by a soldier, while on an Army post, to sell heroin to a civilian, though the delivery and payment are to be made off-post, is a significant threat to the integrity and security of the post and therefore constitutes a crime with sufficient "service connection" to maintain military jurisdiction.[11]

We also disagree with appellant's jurisdictional argument as it relates to the possession charge. The facts make it clear that appellant obtained the heroin in order to consummate the previously determined service connected sale.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge DRIBBEN and Judge DeFORD concur.

5. *See United States v. Edmundson,* 2 M.J. 553 (A.C.M.R. 5 November 1976); *United States v. Kelly,* 2 M.J. 1029 (A.C.M.R. 1 November 1976); *United States v. Zorn,* 2 M.J. 1012 (A.C.M.R. 1976); *United States v. Burston,* 2 M.J. 1015 (A.C.M.R.1976) for some results to date.

6. *See United States v. McCarthy, supra,* 2 M.J. page 26.

7. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

8. *See United States v. McCarthy, supra; United States v. Hedlund,* 2 M.J. 11 (17 September 1976); *United States v. Moore,* 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976); *United States v. Uhlman,* 24 U.S.C.M.A. 256, 51 C.M.R. 635, 2 M.J. 419 (1976); *United States v. Black,* 24 U.S.C.M.A. 162, 51 C.M.R. 381, 1 M.J. 340 (1976).

9. *See* Rules 1–3 and 10 on page 365, and part V on pages 367 and 368, *Relford v. Commandant,* *supra.* While it is clear from *United States v. Hedlund,* 2 M.J. 11 (17 September 1976) that the fact that a crime was conceived on post will not instill jurisdiction in the military over its execution off-post, it is equally apparent from *United States v. McCarthy, supra,* that if the off-post acts are part of the on-post agreement, then jurisdiction may lie.

10. " . . . [I]n resolving questions of military jurisdiction, the situs of the offense is far more significant than the status of the accused or the victim." *United States v. Tucker,* 24 U.S.C.M.A. 311, 312, 52 C.M.R. 22, 23, 1 M.J. 463 (1976); *United States v. Butler,* 41 C.M.R. 620 (A.C.M.R. 1 December 1969).

11. This conclusion represents a *volte-face* for the author judge. He dissented in the original consideration of this case on 25 September 1975 from a decision wherein the majority also found jurisdiction.