UNITED STATES, Appellee,

v.

Sergeant (E–5) John R. BECKMAN, SSN 415–92–4453, United States Army, Appellant.

SPCM 13010.

U. S. Army Court of Military Review.

11 Jan. 1978.

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Major Benjamin A. Sims, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Steven M. Werner, JAGC, and Captain Richard A. Canatela, JAGC, were on the pleadings for appellee.

Before FULTON, MOUNTS and TALIAFERRO, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The appellant, stationed at Fort Campbell, Kentucky, pleaded guilty to and was convicted of selling marijuana "at Montgomery County, Tennessee," which bounds the southeast portion of the post. The military judge, sitting as a special court-martial, sentenced him to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $240.00 pay per month for four months, and reduction to the grade of Private E–1. The convening authority approved the sentence.

On appeal as well as at the trial, appellant contests the court's jurisdiction over the offense on the basis that there was insufficient service connection. *See United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976). He also asserts that Article 54(c) of the Uniform Code of Military Justice, 10 U.S.C. § 854(c), was violated by his removal from Fort Campbell (to the United States Disciplinary Barracks at Fort Leavenworth, Kansas) shortly after the trial and before the convening authority's action. In the exercise of our responsibilities under Article 66 of the Code, we also note issues concerning the adequacy of the judge's plea bargain inquiry (*United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976)) and the admissibility of

records of prior nonjudicial punishment (*United States v. Booker*, 3 M.J. 443 (C.M.A. 1977), opinion modified, 4 M.J. 95 (C.M.A. 1977)).

■ The jurisdictional issue in this case involves an increasingly familiar scenario. A fellow member of the appellant's battery, working as an informer for the installation's drug suppression unit, observed the appellant with approximately one pound of marijuana in the unit area. He told the appellant that he had a "friend" (in reality a military police investigator (MPI)) who wanted to buy some marijuana and he interpreted the appellant's response as an open invitation to visit the appellant's off-post trailer home for that purpose at any time.

About a week later, without more specific arrangements, the informer and the MPI visited the appellant's trailer in a trailer park about seven miles from Fort Campbell near Clarksville, Tennessee, arriving after the appellant seemingly had retired for the night. They informed the appellant that they wished to buy marijuana to use at a party on the installation.[1] He withdrew several packets of marijuana from his refrigerator. His customers selected two and the investigator paid the appellant $40.00.

The trial judge denied appellant's motion to dismiss for lack of subject-matter jurisdiction. We agree with his implicit rejection of the appellant's version of the transaction, but still face the question whether the prosecution's version, when measured against the criteria established in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), supports military jurisdiction. We hold that it does.

The informer and the appellant were members of the same unit and had a duty relationship. The appellant was seen to possess the drug on the post. The intent to sell drugs to the informer's friend was formed and expressed on post. Only payment and delivery remained to be accomplished, and that alone was accomplished away from the installation. It was done under circumstances in which the appellant knew or had reason to believe that the usage of the drug would occur on the installation.[2]

The appellant's drug transaction was engendered by on-post conversations and was military in its origin, military in its participants,[3] and military in the destination and use of the marijuana, so far as the seller knew. Only the land on which it was consummated was not under military jurisdiction.[4] We believe, therefore, that this was

1. The investigator testified that he did this routinely in off-post drug purchases "to establish the military connection." The appellant testified that, at the outset, he had not even wanted to discuss any drug transaction with the informant because "I don't believe I should carry on with any kind of stuff like that on the military reservation." He also testified that, when they came to his trailer, he believed that the informer and his friend wanted the marijuana for an off-post party with some civilian girls and that he specifically warned them not to take the marijuana onto the military installation.

2. Although *McCarthy* involved the sale of three pounds, we do not understand that the sale necessarily must involve such a large quantity to constitute a threat to the security of the installation especially where, as here, the purchase ostensibly was for the use of several persons. Also, we are aware of the possible implication by the Court of Military Appeals that a police-controlled buy can pose no actual threat to the military community. *See United States v. Alef*, 3 M.J. 414, 418 n. 12 (C.M.A. 1977). Such an interpretation of the Court's

remark would be inconsistent with its accompanying observation that the sale in *Alef* did not "appear" to involve a threat and that the locale of the sale and other circumstances are likewise relevant to the remoteness or probability that illicit substances will filter back into the military community. Moreover, this Court's conclusions that jurisdiction can exist under similar circumstances recently have been affirmed. *See, for example, United States v. Valles-Santana*, 54 C.M.R. 383, 389 n. 10, 2 M.J. 1049 (A.C.M.R.1976), *aff'd*, 4 M.J. 84 (C.M.A. 1977); *United States v. Ortiz-Negron*, 54 C.M.R. 362, 365 n. 10, 2 M.J. 1038 (A.C.M.R. 1976), *aff'd*, 4 M.J. 84 (C.M.A.1977).

3. For this purpose, we would regard a civilian employee of the installation (as the appellant claims to have supposed the investigator to be) as no less military than an enlisted person or officer.

4. Even so, trailer courts adjacent to military installations often constitute military residential enclaves which hardly can be said to merge the occupants with the civilian community.

a transaction in which the military interest in deterrence was distinct from and greater than that of the civilian jurisdiction and in which that interest could not adequately be vindicated by the civilian courts.[5]

Having resolved the jurisdictional issue against the appellant, we necessarily turn to the remaining issues.

■ As to the supplementally assigned error, the Court of Military Appeals has not found error in the incarceration of an accused at another place before the convening authority's action on the record. *See, for example, United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 274, 51 C.M.R. 723, 726, 1 M.J. 429, 432 (1976). Even were that Court to change its view (*see United States v. Vick*, 3 M.J. 266 (C.M.A.1977) (order granting petition for review)), we think that remedial action would require a showing of specific prejudice, of which there is none here.

■ We also hold that the military judge's inquiry concerning the plea bargain fully satisfied the requirements of *United States v. Green, supra*. He did not literally ask whether his interpretation of the agreement comported with counsel's understanding of its meaning and effect. Presumably this was because there could be no difference: the entire agreement consisted only of one short paragraph which recited the appellant's offer to plead guilty to one specification and the convening authority's agreement to withdraw the other two specifications and limit any confinement imposed to a four-month term. There were no other requirements (such as for a stipulation) and no "understandings" (such as a list of contingencies that might annul the agreement) involved. The record expressly indicates that there were no other, unwritten, agreements to be interpreted and understood.

■ A question as to the admissibility of a record of non-judicial punishment imposed on the appellant for an earlier offense arises because of the Court of Mili-

tary Appeals' decision in *United States v. Booker, supra*. That Court has not yet addressed the question of *Booker's* retroactivity, but we have done so in several unpublished opinions. In our view, the same reasons that militated against according retroactivity to *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976), are operative here. *See United States v. Jackson*, 3 M.J. 101 (C.M.A.1977). In particular, we note that *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), did not specifically call into question the admissibility of records of nonjudicial punishment and that countless such records have been admitted under service regulations implementing paragraph 75 d of the Manual for Courts-Martial, United States, 1969 (Revised edition). Accordingly, we rest our decision on the nonapplicability of *Booker* to trials occurring before that decision and we do not seek to divine its requirements as to records of nonjudicial punishment.

The findings of guilty and the sentence are affirmed.

Judge MOUNTS and Judge TALIAFERRO concur.

---

**5.** In this connection we note that no civilian court can adjudge a punitive discharge from the armed forces, nor can the services confer a punitive discharge merely by reason of a civilian conviction. Only courts-martial can "vindicate" a military interest to that extent.