UNITED STATES, Appellee,

v.

Sergeant (E–5) Rodney J. KLINE, SSN 368–52–9592, United States Army, Appellant.

CM 435092.

United States Army Court of Military Review.

24 March 1978.

---

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, and Captain D. David Hostler, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, and Captain Laurence M. Huffman, JAGC, were on the pleadings for appellee.

Before CLAUSEN, C. J., and CARNE, Senior Judge, and COOK, J.

## OPINION OF THE COURT ON FURTHER REVIEW

CARNE, Senior Judge:

Appellant was convicted, contrary to his pleas, of the possession and sale of 98 tablets of lysergic acid diethylamide contrary to Article 92, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 892). The offenses were alleged to have occurred at a site in Fayetteville, North Carolina.

On 4 May 1977, this Court ordered a limited hearing on the question of jurisdiction in the military to try these crimes. *See United States v. McCarthy*, 2 M.J. 26 (C.M. A.1976). Pursuant to that order, a hearing was held at Fort Leavenworth, Kansas, on 28 July 1977, at the termination of which the judge determined that such jurisdiction did lie. That decision forms the basis of the present appeal.

The evidence presented at the hearing divulged the following facts:

On 20 March 1975, Private First Class Bondurant was approached at an off-post location by the appellant's roommate, Private Andrew Challenger. Challenger inquired of Bondurant if he wanted to buy some drugs. Bondurant declined, stating that he did not have any money at that time. Whereupon, Challenger invited Bondurant to get in touch when he acquired some funds. Private First Class Bondurant, who was working as an informant, reported this conversation to his control agent. On 23 March 1975, Bondurant was provided with $100.00 by the Criminal Investigation Division and escorted to appellant's off-post trailer to effect a controlled drug purchase. At about 1950 hours he entered the trailer and informed Challenger that he wanted to buy some LSD. Challenger woke the appellant and Bondurant gave him the $100.00. The appellant left the trailer and returned in approximately 45 minutes with the 98 hits of LSD, which he then delivered to Bondurant.

In addition to this testimony concerning the circumstances which constituted appellant's possession and sale of LSD, Private First Class Bondurant also stated that he and the appellant became acquainted while in the same company and saw each other every day in formation for an extended period of time. When Bondurant first joined the company he was a Private (E–2) and subsequently was promoted to Private First Class (E–3). The appellant was a Sergeant (E–5). They had also met many times on post while both were in uniform, and Bondurant knew the appellant to be his superior. The appellant was not Bondurant's work supervisor, however, since they were in different duty sections. At the time of the purchase Bondurant and the appellant talked for three or four minutes and then Bondurant stated that he was going back to the post. Bondurant had been to the appellant's off-post trailer two or three times before the sale and, on each occasion, he had seen military people there other than the appellant and his roommate. In Bondurant's opinion the appellant trusted him regarding the sale of drugs because of their long standing association around the company generally, and because the two men had discussed drugs specifically many times while on post and in uniform.

█ Based on the foregoing we conclude, after applying the rationale of *Relford*[1] and *Alef*,[2] that the following factors support military jurisdiction:

█ The offenses were related to the appellant's military duties, *i. e.,* the appellant became acquainted with the purchaser on post at military formations in the same unit and their association of long standing in the unit and frequent discussions of drugs on post engendered the environment in which this particular off-post sale was consummated.

█ (2) The offenses were related to military authority and involved a flouting thereof, *i. e.,* the appellant was a noncommissioned officer who had an on-going duty to prevent subordinates from violating rules and regulations designed to maintain military discipline.[3]

█ (3) The offenses involved a potential threat to the military post, *i. e.,* under the circumstances the appellant had reason to believe from the purchaser's statement that the drugs were probably destined for return to the military installation and, because of the number of hits, that further distribution to other military personnel would in all probability occur.[4]

In summation, the entire criminal venture was developed by soldiers who had associated in·their military unit, the appellant had reason to believe the next most likely recipient of the contraband would be fellow soldiers on post, and there was a flouting of the superior-subordinate relationship, which is the keystone of military discipline and order. We determine, therefore, that this was a transaction in which the military interest was distinct from and greater than that of the civilian interest and could not be vindicated adequately by the civilian courts. *United States v. McCarthy, supra; United States v. Beckman,* 4 M.J. 814 (A.C.M.R.1978).

The remaining assertions of error have been considered and found to be without merit.

The findings of guilty and the sentence are AFFIRMED.

Chief Judge CLAUSEN concurs.

COOK, Judge, dissents:

While I agree with the recital of the facts contained in the majority opinion, as far as

---

1. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

2. *United States v. Alef,* 3 M.J. 414 (C.M.A. 1977).

3. The recitation in the dissenting opinion of the appellate history in *United States v. Eggleston,* 2 M.J. 1066 (A.C.M.R.1976), *vacated* 4 M.J. 88 (C.M.A.1978), and *United States v. Wright,* 2 M.J. 1086 (A.C.M.R.1976), *affirmed* 4 M.J. 87 (C.M.A.1978), stands for no more than that the superior-subordinate relationship, standing alone, and without a showing that the relationship coerced the sale, may not support military jurisdiction. Where, as in this case and in *Wright,* there are additional factors supporting a finding of jurisdiction, that relationship, as well as the general military status of the victim, is one consideration in resolving the issue of jurisdiction based on a flouting of military authority or the relationship of the offense to either the appellant's or the victim's military duties. *See also United States v. Roulo,* 1 M.J. 1071 (N.C.M.R.1976).

4. Although the Court of Military Appeals recently recognized the factual impossibility of any threat to the military community when the purchaser was an informant working for the OSI, the facts in that case did not involve the announced intent to return to post with the drugs purchased. *United States v. Alef,* 3 M.J. at 418 n. 12. Applying the suggested analysis in *Alef,* that we consider other circumstances which would determine the remoteness or probability of any threat to the military community, we find that in this case the announced intent of the purchaser to return to post, coupled with the quantity of LSD purchased, created an intent on the part of the appellant to sell drugs which could foreseeably pose a threat to the military community. The timing of the purchaser's announced intention of returning to the post after the transfer of drugs and money had occurred is no more significant than the fact that the appellant made no effort to rescind the sale once he was aware of that intention. Other cases involving a sale to informers which were decided partially on that basis prior to *Alef,* and have been affirmed since *Alef,* include *United States v. Valles-Santana,* 2 M.J. 1049 (A.C.M.R.1976), *affirmed* 4 M.J. 84 (C.M.A.1977); *United States v. Ortiz-Negron,* 2 M.J. 1038 (A.C.M.R.1976), *affirmed* 4 M.J. 84 (C.M.A.1977).

they go, I find them incomplete and the construction placed thereon incorrect. At the time of the incident both the appellant and the purchaser were off duty and in civilian dress. The purchaser stated that he had never been involved in a drug transaction with the appellant before the incident in·question. It is true that the purchaser testified that he and the appellant had discussed the use of drugs while in the company area, but the content of those conversations is totally unrevealed in this record. For ought we can tell the appellant was discouraging the use of drugs during these discourses.

The majority rests jurisdiction on three bases. One is that the offenses were related to the appellant's military duties because the appellant made the purchaser's acquaintance on post and because the two men's on-post discussions had engendered this off-post sale. There is no evidence of record to sustain this conclusion. It can only be arrived at if one is willing to agree that all offenses, involving soldiers who first become acquainted on post and discuss drugs, *ipso facto* arise from or are related to their military duties. I do not believe that any such broad interpretation was intended to be accorded that *Relford* criterion.* From my reading of the facts the only on-post acquaintanceship that precipitated this transaction was the one between Bondurant (purchaser) and Challenger (appellant's roommate). There is no evidence that appellant had any part of Challenger's earlier solicitation of Bondurant.

A second basis for the majority's view is that the offenses involved a threat to the military post because of the purchaser's statement that he was going to return to post and because of the size of the purchase. The appellant, however, can hardly be charged with threatening the military post premised on the purchaser's remarks since the purchaser didn't make his remark until *after* the sale. Nor is there any evi-

dence of record as to how probable it is that 98 hits of LSD will or will not be consumed by one individual. Any conclusion that the purchaser was going to return to post and sell some or all of this contraband is bottomed on pure conjecture. In this case, however, even the conjecture is demonstrably erroneous since the purchaser was an informer who turned the illicit cache over to the police before he returned to post. *See United States v. Alef*, 3 M.J. 414, 418 n.12 (C.M.A.1977).

Thirdly, my brethren state that the offenses are related to military authority and involve a flouting thereof because of the appellant's NCO status *vis a vis* the purchaser's grade of PFC. I have a problem in embracing this theory because I believe it casts too broad a net. Query: What are the perimeters, if any, of such a theory? Would the theory apply if the NCO were the buyer, rather than, as in this case, the seller? Does the theory confer jurisdiction over all parties to the transaction, *i. e.*, can a subordinate-buyer be tried by court-martial as the result of an off-post purchase because he bought from an NCO? Is the theory applicable in cases, other than ones alleging drug crimes, which involve superiors and subordinates? Does it apply in cases involving only officers; in cases consisting of dealings only between warrant officers; in cases concerned solely with officers or warrant officers or enlisted men of the same grade but with different dates of rank? If not, why not? Can it not be said that there is a military relationship and a flouting thereof present to some degree in all criminal activity involving superiors and subordinates, whether that involvement be as coactors or as victims? In my view the answer is an unequivocal yes. I believe, however, that it is just as clear that such status, alone, as I find to be the situation in this case, is not sufficient to confer jurisdiction on military courts. *United States v.*

---

* *Relford v. Commandant*, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *cf., United States v. Sims*, 2 M.J. 109 (C.M.A.1977), (no jurisdiction over the off-post forgery of money orders defendant knew had been stolen from

another soldier on post); *United States v. Uhlman*, 1 M.J. 419 (C.M.A.1976) (no jurisdiction over the off-post forgery of checks defendant had stolen from a fellow airman on post).

*Wilson,* 2 M.J. 24 (C.M.A.1976); *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976); *United States v. Tucker,* 1 M.J. 463 (C.M.A. 1976). The *Tucker* decision specifically provides that, ". . . in resolving questions of military jurisdiction, the situs of the offense is far more significant that the status of the accused or the victim . . This is particularly true where, as here, a servicemember is only indirectly 'victimized' by the defendant." *Id.* at 464.

Two instances of reported cases in which this Court bottomed jurisdiction on the fact that the drug seller was superior in rank to the buyer are *United States v. Eggleston,* 2 M.J. 1066 (A.C.M.R.1976), and *United States v. Wright,* 2 M.J. 1086 (A.C.M.R.1976). In the former case, it is apparent that jurisdiction was found to exist solely on the basis of the military status. The Court of Military Appeals vacated this Court's opinion and returned the case for a *DuBay* hearing [*United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967)]. *United States v. Eggleston,* 4 M.J. 88 (C.M.A.1978). In the second case, the concurring opinion by Judge Felder notes that there are on-post factors upon which military jurisdiction can rest, *i. e.,* funds were obtained from soldiers on post to make the off-post drug purchase. That decision was affirmed by the Court of Military Appeals, with Judge Cook concurring specifically on the basis of on-base activity. *United States v. Wright,* 4 M.J. 87 (C.M.A.1978). I also note that in the landmark case of *United States v. McCarthy, supra,* the appellant was a training NCO in the buyer's unit, yet the Court did not rely exclusively, if at all, on that status to find jurisdiction.

Weighing the facts in this case on the scales provided by *Relford, supra,* I find them incapable of sustaining jurisdiction in the military courts.

1. Appellant was, at the time of these offenses, properly absent from base.

2. The criminal acts were committed off post.

3. The crimes occurred at a place not under military control.

4. The crimes took place within the territorial limits of the United States and not in an occupied zone of a foreign country.

5. They were committed in peace time and they are unrelated to authority stemming from the war power.

6. There is no connection between the appellant's military duties and the crimes.

7. The "victim" was not engaged in the performance of any duty relating to the military.

8. The civilian courts in North Carolina were present and available for the prosecution of appellant.

9. There was no flouting of military authority.

10. There was no proof of any threat to a military post.

11. No violation of military property was evident.

12. The crimes alleged are among those traditionally prosecuted in the civilian courts.

Therefore, I would set aside the findings of guilty and the sentence and dismiss the charges.